MERRICK GARLAND, Attorney General
KRISTEN CLARKE, Assistant Attorney General
CARRIE PAGNUCCO, Acting Chief
ELIZABETH A. SINGER, Director, U.S. Attorneys' Fair Housing Program
ALAN A. MARTINSON, Trial Attorney
U.S. Department of Justice
950 Pennsylvania Avenue, NW – 4CON
Washington, DC 20530
Telephone: (202) 598-7078
Alan.Martinson@usdoj.gov

PHILLIP A. TALBERT
United States Attorney
COLLEEN M. KENNEDY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

ATTORNEYS FOR PLAINTIFF UNITED STATES

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FPI MANAGEMENT, INC.,<br><br>Defendant. | COMPLAINT PURSUANT TO THE SERVICEMEMBERS CIVIL RELIEF ACT, 50 U.S.C. §§ 3901 – 4043 |

## COMPLAINT

Plaintiff United States of America respectfully alleges:

## INTRODUCTION

1. The United States brings this action under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, against FPI Management, Inc. ("Defendant") for violating the SCRA's prohibition against imposing early termination charges when a servicemember lawfully terminates a residential lease upon receipt of qualifying military orders. See 50 U.S.C. § 3955.

2. The purpose of the SCRA is to provide servicemembers with protections to enable them to devote their entire energy to the defense needs of the Nation and to protect their civil rights during military service. See 50 U.S.C. § 3902. One of those protections is the right of a lessee to terminate a residential lease without penalty upon entering into military service or upon receiving qualifying military orders. 50 U.S.C. § 3955(a)(1), (e)(1). Qualifying orders include orders for a permanent change of station, or for deployment with a military unit (or as an individual in support of a military operation) for a period of not less than 90 days. 50 U.S.C. § 3955(b)(1)(B).

3. Upon receiving qualifying orders, the servicemember can terminate the residential lease without penalty, provided that the servicemember provides the lessor with (i) written notice of the termination and (ii) a copy of the servicemember's military orders. 50 U.S.C. § 3955(c)(1)(A).

4. The termination of the residential lease is effective 30 days after the first date on which the next rental payment is due after the date on which the notice is delivered. 50 U.S.C. § 3955(d)(1). The lessor may not impose an "early termination charge" against the servicemember. 50 U.S.C. § 3955(e)(1).

5. This lawsuit is brought to vindicate the rights of servicemembers who were wrongly required to pay an early termination charge by Defendant, to vindicate the public interest, and to protect servicemembers from future violations of their rights. See 50 U.S.C. § 4041.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 50 U.S.C. § 4041.

7. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) because Defendant's principal place of business is in the Eastern District of California, Defendant conducts business within the Eastern District of California, and because a substantial portion of the events and omissions that form the basis of United States' claim occurred within the Eastern District of California.

## PARTIES

8. Plaintiff is the United States of America.

9. Defendant is a California corporation, administered from, and with a principal place of business at, 800 Iron Point Road, Folsom, California. Defendant provides property management services for over 130,000 multifamily housing units across sixteen (16) states, including California. Defendant's operations include management of properties in the Eastern District of California, including properties in El Dorado, Fresno, Modoc, Placer, Sacramento, San Joaquin, Stanislaus, Yolo, and Yuba Counties. Defendant also manages properties in other areas of California, including Alameda County.

## FACTUAL ALLEGATIONS

10. At properties it manages, Defendant requires residents to sign a lease before moving in, which also includes various addenda that must also be signed at the same time. The lease includes an obligation to stay at the property for a specified lease term.

11. In at least some instances, Defendant offers prospective residents an incentive to choose to live at the property or to accept a longer lease term, which can take the form of free rent, free parking, or other financial incentives.

### U.S. Coast Guard Petty Officer First Class William Fuchs

12. On November 26, 2019, Coast Guard Petty Officer First Class (PO1) William Fuchs entered into a two-year residential lease with Defendant for an apartment at the Orion Apartments in Oakland, California. Orion is a 2-mile drive to Coast Guard Island Alameda, and it is a popular choice for servicemembers stationed there.

13. At the time of lease signing, Defendant offered PO1 Fuchs several lease incentives, including two months of free rent, six months of free parking, and a one-time concession of $2,000 toward move-in costs. These amounts totaled $7,838.58 and are reflected in a Concession Addendum attached to the lease. The Concession Addendum provided that the lessee would have to repay the incentives if they moved out before the end of the lease term.

14. On February 2, 2021, PO1 Fuchs received permanent change of station (PCS) orders from the Coast Guard requiring him to relocate to Charleston, South Carolina.

15. On March 3, 2021, PO1 Fuchs emailed Defendant's agent, Orion's Assistant Community Director Chelley Crusto-Osorio, stating his intention to move out in April, and provided a copy of his orders. Ms. Crusto-Osorio responded the same day, sending him a notice to vacate form to fill out and advising that he would have to repay the $7,838.58 in concessions.

16. On March 4, 2021, PO1 Fuchs provided a notice to vacate, indicating that he would move out on April 30, 2021, stating the reason for vacating as "Military orders." PO1 Fuchs subsequently had an e-mail exchange with Ms. Crusto-Osorio, and on March 23, 2021, she reiterated that he would have to repay all the lease concessions.

17. On March 26, 2021, PO1 Fuchs sent a formal letter to Defendant requesting lease termination pursuant to the SCRA. On April 1, 2021, Ms. Crusto-Osorio e-mailed PO1 Fuchs stating that the concessions repayment "is due simultaneously with the provided Notice to Vacate form." On April 5, 2021, Ms. Crusto-Osorio confirmed receipt of the notice to vacate form and military orders.

18. On April 13, 2021, the United States sent a letter informing Defendant that it was opening an investigation into its compliance with the SCRA. The letter requested that Defendant "not attempt to charge or collect any amounts from PO1 Fuchs during the…investigation, other than reasonable charges for wear and tear upon move-out and any rent amounts currently due and unpaid."

///

///

///

**U.S. Coast Guard Petty Officer First Class Aaron Gomez**

19. On November 30, 2019, Petty Officer First Class (PO1) Aaron Gomez and his wife, Chaundra Gomez (also a servicemember in the Coast Guard), entered into a two-year residential lease at Orion Apartments.

20. At the time of lease signing, Defendant offered the Gomezes lease incentives totaling $8,590, consisting of two months of free rent and a one-time concession of $2,000 toward move-in costs. The Gomezes signed a Concession Addendum similar to the one signed by PO1 Fuchs.

21. On May 28, 2020, PO1 Gomez received military separation orders, which listed Topeka, Kansas as the "report to" location. He submitted a notice of termination on June 11, 2020, attaching a copy of his separation orders, and Ms. Gomez also sent the orders to Defendant by e-mail. PO1 Gomez's notice stated that "[t]he SCRA prohibits any early termination charges or penalties."

22. Nonetheless, Defendant sought repayment of all $8,590 in concessions. Defendant's agents informed PO1 Gomez that although he would not have to pay a "lease break fee," he would be required to repay the concessions.

23. The Gomezes subsequently repaid the full amount of the lease incentives.

**Other Aggrieved Servicemembers**

24. In addition to PO1 Gomez, Defendant has imposed substantial early termination charges on eight other servicemembers who qualified for early termination under the SCRA.

25. Defendant has no written policies or procedures to prevent the unlawful imposition of early termination charges on servicemembers who terminate their leases under the SCRA.

**CAUSE OF ACTION**

**Servicemembers Civil Relief Act**

26. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated by reference as if fully stated herein.

27. The SCRA provides that "[t]he lessee on a [residential] lease . . . may, at the lessee's option, terminate the lease at any time after – (A) the lessee's entry into military service; (B) the date of the lessee's military orders . . . ; or (C) the date of the lessee's stop movement order . . . ." 50 U.S.C. § 3955(a)(1).

28. The early residential lease termination option provided in the SCRA applies to:

   a. individuals who execute a residential lease and "thereafter and during the term of the lease enter[] military service";

   b. servicemembers who, "while in military service, execute[] the lease and thereafter receive[] military orders for a permanent change of station[, or] to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 90 days"; and

   c. servicemembers who "execute[] a lease upon receipt of military orders for a permanent change of station or to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 90 days [and] thereafter receive[] a [qualifying] stop movement order." 50 U.S.C. § 3955(b)(1).

29. Except in the case of receipt of stop movement orders, termination of leases involving monthly rent payments "is effective 30 days after the first date on which the next rental payment is due and payable after the date on which the [termination] notice . . . is delivered." 50 U.S.C. § 3955(d)(1)(A). Termination in the case of receipt of stop movement orders is effective on the date the servicemember has provided both written notice of termination and a copy of the orders. 50 U.S.C. § 3955(d)(1)(B).

30. "The lessor may not impose an early termination charge, but any taxes, summonses, or other obligations and liabilities of the lessee in accordance with the terms of the lease, including reasonable charges to the lessee for excess wear, that are due and unpaid at the time of termination of the lease shall be paid by the lessee." 50 U.S.C. § 3955(e)(1).

31. Defendant has engaged in a pattern or practice of violating 50 U.S.C. § 3955(e)(1) in Alameda County, California by requiring servicemembers who are exercising their SCRA rights to terminate their residential leases to repay lease incentives Defendant provided to induce them to enter into the lease.

32. Defendant's imposition of early termination charges against Petty Officer First Class Gomez and eight other servicemembers in violation of 50 U.S.C. § 3955 raises issues of significant public importance.

33. Petty Officer First Class Gomez and the eight other servicemembers who exercised their SCRA

right to terminate their residential lease and were required to pay early termination charges are "person[s] aggrieved" under 50 U.S.C. § 4041(b)(2) and have suffered damages as a result of Defendant's conduct.

34. Defendant's conduct was intentional, willful, and taken in disregard for the rights of servicemembers.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that this Court:

35. Declare that Defendant's conduct violated the Servicemembers Civil Relief Act, 50 U.S.C. § 3901, *et seq*.;

36. Enjoin Defendant, its agents, employees, and successors, and all other persons and entities in active concert or participation with Defendant from:

   a. requiring servicemembers who terminate a lease pursuant to the SCRA to repay rent concessions or incentives;

   b. imposing any other early termination charges on servicemembers who terminate a lease pursuant to the SCRA;

   c. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, each identified victim of Defendant's illegal conduct to the position they would have been in but for that illegal conduct; and

   d. failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any illegal conduct in the future;

37. Award appropriate monetary damages under 50 U.S.C. § 4041(b)(2) to each identifiable victim of Defendant's violations of the SCRA;

38. Assess civil penalties against Defendant under 50 U.S.C. § 4041(b)(3) in order to vindicate the public interest; and

39. Order such other appropriate relief as the interests of justice may require.

///

///

///

DATED: June 13, 2023

Respectfully submitted,

MERRICK GARLAND
Attorney General

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

/s/ Alan A. Martinson
CARRIE PAGNUCCO, Acting Chief
ELIZABETH A. SINGER, Director
U.S. Attorneys' Fair Housing Program
ALAN A. MARTINSON,
Trial Attorney
Housing & Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice

PHILLIP A. TALBERT
United States Attorney
COLLEEN M. KENNEDY
Assistant United States Attorney

Attorneys for the United States